UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BATTISTA GERITANO,

                Petitioner,                            **MEMORANDUM AND ORDER**
                                                                   03-CR-970 (RPK)
        v.                                                   15-CV-6737 (RPK)
                                                                       19-CV-7075 (RPK) (LB)

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    *Pro se* petitioner Battista Geritano moves pursuant to 28 U.S.C. § 2255 to vacate, correct, or set aside his 2013 sentence for violating the conditions of his supervised release. *See* Motion Under 28 U.S.C. § 2255, No. 03-CR-970 (RPK), *United States v. Geritano* (E.D.N.Y.) (Dkt. #384) ("Section 2255 Petition"). He has also filed a habeas petition under 28 U.S.C. § 2241, challenging the same 2013 sentence, *see* Petition for Writ of Habeas Corpus, No. 19-CV-7075 (RPK) (LB), *Geritano v. United States* (E.D.N.Y.) (Dkt. #1) ("Section 2241 Petition"), a motion to amend his Section 2255 petition to add documentary evidence, *see* Mot. to Amend, No. 03-CR-970 (Dkt #390), a supplemental affidavit supporting his Section 2241 petition, *see* Supp. Aff., No. 19-CV-7075 (Dkt. #34), a letter "clarify[ing] a few issues pertaining to the un-decided § 2241 [petition]," Letter Clarifying a Few Issues, No. 19-CV-7075 (Dkt. #37), and a supplemental letter containing additional materials, *see* Letter Dated Apr. 8, 2023, No. 19-CV-7075 (Dkt. #38). In addition, Geritano has filed two motions for a hearing. *See* Oct. 28, 2019 Mot. for Hearing, No. 03-CR-970 (Dkt. #394); Oct. 3, 2022 Mot. for Hearing, No. 03-CR-970 (Dkt. #435). The Court construes the Section 2241 petition and Geritano's supplemental filings as motions to amend the Section 2255 petition. I exercise my discretion to grant the motions to amend but deny the Section 2255 petition, as amended. The requests for a hearing are also denied.

## BACKGROUND

### I. 2004 Conviction and First Violation of Supervised Release

In 2004, Geritano pleaded guilty in federal court to conspiracy to commit racketeering and conspiracy to commit bank burglary. *See* Mar. 26, 2004 Judgment 1, No. 03-CR-970 (Dkt. #113). The charges related to a scheme to rob banks' night-deposit boxes. Geritano was sentenced to 71 months of imprisonment, with all but the final six months to run consecutive to a state-imposed sentence, and with the term of imprisonment to be followed by three years of supervised release. *Id*. at 2. Geritano was released in September 2010.

In 2011, Geritano was arrested on state charges of attempted murder, assault, and criminal possession of a weapon. The United States Probation Department then charged Geritano with violating the terms of his supervised release by committing various state crimes and by using illegal drugs. After an evidentiary hearing, Geritano was found guilty on the drug-use charge. The Court dismissed the remaining counts. Based on the drug-use violation, the Court revoked Geritano's supervised release and sentenced him to one year of imprisonment to be followed by one further year of supervised release. *See* July 15, 2011 Judgment 2–3, No. 03-CR-970 (Dkt. #345).

### II. Second Violation of Supervised Release

In August 2012, Geritano was released from prison and began his second term of supervised release.

On January 7, 2013, the New York City Police Department ("NYPD") arrested Geritano in connection with a stabbing that had occurred at Club Nouveau in Brooklyn on December 23, 2012. Geritano was charged in state court with two counts of assault and one count of criminal possession of a weapon. The following week, the United States Probation Department issued a

report charging Geritano with committing a violation of supervised release ("VOSR") by committing state crimes (the "VOSR Report").  Geritano was taken into federal custody.

A revocation hearing was held before Judge Sterling Johnson, Jr., on February 13, 2013. At the hearing, NYPD Detective Brian Meyers testified about the investigation of the stabbing and relayed the account of the stabbing victim, Nunzio Fusco.  *See* Transcript of Feb. 13, 2013 Proceeding, No. 03-CR-970 (Dkt. #414) ("Hrg. Tr."). Detective Meyers testified that Fusco had gone to Club Nouveau with his girlfriend. *Id.* at 8:1–3. According to Detective Meyers' summary, Fusco bumped into someone while making his way to the bar. *Id.* at 8:5–7. Fusco did not know the individual at the time, but he later identified him as Geritano. *Id.* at 8:19–20; 9:4–8. Fusco apologized, but Geritano was "looking to start something" and pushed Fusco's girlfriend, at which point Fusco punched Geritano. *Id.* at 8:7–12. A fight broke out, during which "a bunch of males started punching" Fusco. *Id.* at 22:8–10. Fusco was stabbed—a fact that he only realized after the fight was broken up and he was taken outside. *Id.* at 9:18–19; 10:16–18. Fusco identified Geritano as the person that he punched at the bar, but Fusco was unable to identify Geritano, or anyone else, as the person who stabbed him. *See id.* at 22:15–19. Fusco underwent surgery for multiple stab wounds to the stomach and sustained a rib fracture and an open wound to the forearm. *Id.* at 6:9–16.

The government offered into evidence at the hearing a video recording taken at Club Nouveau during the melee. The recording showed the club's lobby, with doors leading to the club's interior and exit, but it did not show the interior of the club where the stabbing allegedly occurred. *Id*. at 10:6–18. The video showed "the fight starting inside the club" and "later spill[ing] out" into the lobby. *Id*. at 11:16–19. It then showed bouncers leading Fusco through the lobby from the club's interior. *Id*. at 11:20–22. Geritano came out after Fusco, holding an object

"[c]onsistent with a knife." *Id.* at 11:23–12:3. The video showed Geritano moving towards Fusco in "an aggressive stance" while holding "a sharp object" as Fusco moved away. *Id.* at 13:9–24; 14:5–9. Fusco then exited the lobby where, according to Detective Meyers, he told police officers that "he had been stabbed in the club." *Id.* at 12:4–10.

Detective Meyers further testified at the hearing that he arrested Geritano and that, while transporting Geritano to the police precinct, Geritano told NYPD officers that he had picked a knife up off the floor and gave it to somebody in the club. *Id.* at 17:13–18:5. Geritano said he left Club Nouveau through the rear door while the police officers entered by the front door. *Id.* at 18:16–22. A knife was never recovered. *Id.* at 12:16–17.

At the end of the revocation hearing, Judge Johnson determined that Geritano had violated the conditions of his supervised release. Specifically, Judge Johnson found

> that on December 23rd the defendant Battista Geritano was on supervised release, that he was at Club Nouveau a little after 2:00 a.m., he was involved in an altercation with Mr. Fusco. I credit the testimony of Detective Meyers. I viewed the video, I examined the [investigative reports] that were entered into evidence, and I find that the government has sustained its burden of proof and that the defendant, Mr. Geritano, did in fact stab Mr. Fusco and I find he did violate his supervision, that the charges are substantiated.

*Id.* at 32:4–13. On May 3, 2013, before the state charges against Geritano stemming from the stabbing were resolved, Geritano was sentenced to 24 months of imprisonment, to run consecutive to any state-imposed sentence based on the same conduct, and to be followed by one further year of supervised release. *See* May 3, 2013 Judgment 2–3, No. 03-CR-970 (Dkt. #366).

In November 2013, Geritano went to trial before a jury in New York Supreme Court, Kings County, in connection with the Club Nouveau stabbing. *See People v. Geritano*, 71 N.Y.S.3d 531, 531 (App. Div. 2018). At trial, Fusco testified that he had been fighting with three men in the bar, including Geritano, but that he did not know which one stabbed him. *See* Section 2255 Petition

39–40.  A jury convicted Geritano of attempted assault in the first degree and criminal possession of a weapon in the third degree, and he was sentenced to twelve years in prison.  *See Geritano*, 71 N.Y.S.3d at 531.  The conviction was affirmed on appeal.  *Ibid*.

Meanwhile, with the assistance of counsel, Geritano appealed the revocation of his supervised release based on his commission of state crimes, arguing that "the supervised release proceedings violated his right to due process because he was never provided with written notice of the charges against him."  *United States v. Boyle*, 563 F. App'x 24, 25 (2d Cir. 2014).  The Second Circuit affirmed the judgment.  *Id.* at 27.  Applying plain-error review to this unpreserved argument, the Court of Appeals found that Geritano failed to show that any error "affected his substantial rights or that it seriously affected the fairness, integrity, or public reputation of the proceedings."  *Id*. at 26.

### III.  Post-Conviction Filings

In November 2015, proceeding *pro se*, Geritano filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence for the 2013 violation of supervised release.  *See* Section 2255 Petition 1.  Geritano contends in that petition that he received ineffective assistance of counsel because his attorney allegedly (i) failed to obtain a copy of the VOSR Report prior to the revocation hearing, (ii) failed to prepare a defense and interview potential witnesses, and (iii) failed to object to the legality of his sentence.  *Id*. at 6–9, 13.  Geritano also contends that his sentence for violating his supervised release exceeds the permissible maximum sentence.  *Id*. at 11–16.

In March 2019, Geritano moved to amend his Section 2255 Petition in light of "newly discovered documents."  *See* Mot. to Amend 1.  Geritano sought to supplement the petition with:

(1) an unsworn, unsigned email dated January 24, 2013, purporting to be a statement from Club Nouveau's head of security, Thomas Turner, stating that Turner saw Geritano pick a

    knife up off the floor and that Fusco's girlfriend, Cindy Moustaffa, identified a patron in a white shirt as the person who had stabbed Fusco, *id.* at 11;

(2) a notarized statement dated September 18, 2013, from Harry Shasho, stating that he was identified by Ms. Moustaffa on the night of the stabbing as Fusco's assailant, and was briefly detained and released at the site by the NYPD, *id.* at 12;

(3) a notarized statement dated January 20, 2015, from John Cerbone claiming that he went with "Nunzio Jr." and "Nunzio Sr." to see Geritano's attorney and advise him that they did not know who had stabbed Fusco, and that Cerbone "called the defendant on 12/23/12," and "met him at my mother's house with Nunzio Sr. to let him know that we knew it wasn't him that did the stabbing," *id.* at 15;

(4) a notarized statement dated February 5, 2015, from Joseph Fiore in which he states that if he had been called to testify, he would have stated that he did not see Geritano stab anyone, *id.* at 16;

(5) an unsworn statement dated September 7, 2016, from Heather Kornhaber, the owner of Club Nouveau, regarding video footage of Fusco punching Geritano at the bar, but making no mention of the stabbing, *id.* at 17;

(6) a notarized letter dated April 24, 2016, from Eli Nackab stating that based on his review of Club Nouveau's floor plan, he can be "one hundred percent sure" that cameras in the bar area would have recorded the fight, *id.* at 18;

(7) a sworn affidavit dated January 23, 2019, from Jason Polanco, who states that he stabbed a man during a dispute in the bar area of Club Nouveau on December 23, 2012, *id.* at 13–14; and

(8) a notarized statement dated February 19, 2019, from Fusco, in which Fusco states that he does not know who stabbed him, *id.* at 6.

    In December 2019, Geritano filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the 2013 revocation of his supervised release. *See* Section 2241 Petition 1. The petition raises the following claims: (1) the VOSR Report is contradicted by newly discovered evidence, namely Fusco's affidavit stating that he had not identified the person who stabbed him and Polanco's affidavit stating that he had stabbed Fusco; (2) Geritano and his counsel did not receive written notice of the VOSR allegations before the hearing, and counsel was therefore unprepared; (3) Geritano was denied due process and received ineffective assistance of counsel because he assumed the revocation hearing was a bail proceeding and because his counsel was not

prepared; (4) the sentence imposed is illegal; and (5) Geritano's counsel refused to follow Geritano's "instructions to call witnesses, request [a] bail hearing, and to present documentary evidence." *Id.* at 6–7. Geritano also suggests that he is innocent of the stabbing. *Ibid*.

In July 2022, Geritano filed a supplemental affidavit supporting his Section 2241 petition. *See* Supp. Aff. He principally argues that his 2013 VOSR proceeding was tainted by perjurious and false allegations, that the accusatory instrument filed in state court was invalid, that the government acted improperly at his VOSR hearing by submitting only a portion of Club Nouveau's surveillance footage from the night of the stabbing, and that he is innocent in light of the newly discovered evidence, again relying on Fusco's affidavit. *See id*. at 2–18.

In March 2023, Geritano filed a letter seeking to "clarify a few issued pertaining to the undecided § 2241 [Petition]." Letter Clarifying a Few Issues 2. In that letter, Geritano principally argues that the VOSR Report and "warrant affidavit" include false allegations, that "the prosecutor was aware and knew" of these false allegations, that Nunzio's affidavit establishes that Nunzio did not identify Geritano as the person who stabbed him, and that Geritano was denied due process by not being given a copy of the VOSR Report before the revocation hearing. *Id*. at 2–12.

In April 2023, Geritano filed a letter seeking to supplement his Section 2241 petition with an affidavit dated November 17, 2022, from Ralph Lafemina, who states that he is a private investigator retained to help Geritano in 2013. *See* Letter Dated Apr. 8, 2023. Lafemina states that he "was asked by [Geritano] to speak with . . . Harry Hamshel, Thomas Turner and John Civone." *Id.* at 2. But he states that Geritano's counsel "stated that he did not want these people interviewed," and "that they would not help the case." *Ibid*. The April 2023 submission also includes what appear to be the investigator's handwritten notes from the investigation; an affidavit from Fusco dated May 8, 2013, in which Fusco again states that he "do[es] not know who stabbed

[him]" at Club Nouveau; and more than 60 pages of records such as police reports, court transcripts, and correspondence. *Id*. at 5–76.

Geritano has twice filed requests for a hearing. *See* Oct. 28, 2019 Mot. for Hearing; Oct. 3, 2022 Mot. for Hearing.

He is presently serving his state sentence. *See* NYS Incarcerated Lookup, DIN 14A4540, http://nysdoccslookup.doccs.ny.gov (last visited May 17, 2023).

## DISCUSSION

I construe Geritano's Section 2241 petition and his supplemental filings as motions to amend the Section 2255 petition and, so construed, I grant the motions to amend. As explained below, however, Geritano's Section 2255 petition is time-barred. Accordingly, the amended petition is denied, as are Geritano's requests for a hearing.

**I.   The Section 2255 Petition Is Amended.**

Geritano's Section 2255 petition is amended to include the arguments in his Section 2241 petition and supplemental filings, as well as the materials that accompany his motion to amend.

As to the Section 2241 petition, "it is well-settled that a district court may convert a § 2241 petition to a § 2255 motion in appropriate circumstances." *Ching v. United States*, 298 F.3d 174, 176 (2d Cir. 2002). Doing so is appropriate here because the arguments in the Section 2241 petition are properly brought under Section 2255. While Section 2241 may be used to "challenge[] the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions," claims that "challenge a sentence as violating the Constitution or laws of the United States"—such as the ones presented here—must generally be brought under Section 2255. *Jiminian v. Nash,* 245 F.3d 144, 146–47 (2d Cir. 2001) (emphasis in original). Moreover, when a petition under Section 2241 is "submitted during the pendency of

an initial § 2255 motion," the petition "should be construed as a motion to amend the initial motion." *Ching*, 298 F.3d at 175.  Accordingly, Geritano's Section 2241 petition is construed as a motion to amend his Section 2255 petition.  *See Fisher v. Hudson*, 665 F. App'x 59, 61 (2d Cir. 2016) (construing a Section 2241 petition as a Section 2255 petition and then construing this "later-filed § 2255 petition as a motion to amend" an earlier-filed Section 2255 petition); *Geronimo v. Rushing,* No. 11-CV-1121 (CBA), 2014 WL 4678253, at *8 (E.D.N.Y. Sept. 19, 2014) (construing a Section 2241 petition as a motion to amend a pending Section 2255 petition).

The Court also construes Geritano's July 2022 supplemental affidavit, his March 2023 letter, and his April 2023 letter as motions to amend the Section 2255 petition.  A *pro se* party's submissions are liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and courts in this Circuit routinely treat a *pro se* petitioner's supplemental submission as a motion to amend the initial petition, *see, e.g.*, *Savoca v. United States*, No. 07-CV-2524 (LMS), 2013 WL 10054624, at *28 (S.D.N.Y. Aug. 8, 2013) ("Because Lawrence is a *pro se* litigant, the Court construes his submission liberally, and therefore will treat it as a motion to amend the original § 2255 motion.") (internal citations omitted); *Bennett v. United States*, No. 03-CV-1852 (SAS), 2004 WL 2711064, at *8 (S.D.N.Y. Nov. 23, 2004); *Israel v. Riley*, No. 90-CV-2184, 1992 WL 100157, at *3 (E.D.N.Y. Apr. 21, 1992); *Wilson v. United States*, No. 13-CR-777-03 (AJN), 2019 WL 3752476, at *2 (S.D.N.Y. Aug. 8, 2019); *Oruche v. United States*, No. 12-CV-04072 (AT) (KHP), 2022 WL 17850779, at *6 (S.D.N.Y. Dec. 7, 2022), *report and recommendation adopted*, 2022 WL 17850888 (S.D.N.Y. Dec. 22, 2022).

So construed, Geritano's motions to amend are granted.  A motion to amend a Section 2255 petition is analyzed under the standards set forth in Federal Rule of Civil Procedure 15(a).  *Ching*, 298 F.3d at 180 (citing *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001)).  That rule provides

that "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), although "district courts . . . retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive," *Littlejohn*, 271 F.3d at 363 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, the Court exercises its discretion to permit Geritano's amendments, because there is no indication that Geritano is engaging in delay tactics or other abusive conduct, or that his amendments are unfairly prejudicial to the government.  While the government contends that leave to amend should be denied as futile, *see* Response to Pet. for Writ of Habeas Corpus 6–10, No. 19-CV-7075 (Dkt. #30), the merits analysis needed to determine futility can just as easily be performed in the context of this case by adjudicating the amended petition.  Accordingly, I treat the Section 2255 petition as incorporating the arguments in Geritano's motion to amend, his Section 2241 petition, the supplemental affidavit he submitted in support of his Section 2241 petition, the supplemental letter he submitted in March 2023, and the supplemental letter he filed in April 2023.

## II.    Geritano Is Not Entitled to Relief.

Geritano's amended Section 2255 petition is time-barred.

### A.   Geritano's Petition Was Not Filed Within the Limitations Period.

Geritano did not file his Section 2255 petition within the one-year statute of limitations. Section 2255 permits a federal prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  A litigant in state custody, like Geritano, may seek relief from a federal sentence that he will begin to serve after his state incarceration.  *See Garlotte v. Fordice*, 515 U.S. 39, 44 (1995).  But such petitions are subject to a one-year statute of limitations, which begins to run, as

relevant here, on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). A judgment becomes final when the Supreme Court "affirms [the] conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Rosa v. United States,* 785 F.3d 856, 859 (2d Cir. 2015) (citation omitted).

Geritano's Section 2255 petition is not timely under these principles. Geritano challenges the sentence imposed for his second violation of supervised release. *See* Section 2255 Petition 1. Judgment was entered in May 2013, *see* May 3, 2013 Judgment, and the Second Circuit denied Geritano's appeal of that judgment on April 16, 2014, *see United States v. Boyle,* 563 F. App'x 24 (2d Cir. 2014). Contrary to Geritano's suggestion that he filed a petition for certiorari "in around July 2013," Section 2255 Petition 23, neither the Second Circuit docket nor the Supreme Court docket reflect that a petition for certiorari was filed in this case. Accordingly, Geritano's judgment of conviction became final on July 15, 2014, when Geritano's time to file such a petition expired. *See* 28 U.S.C. § 2255(f)(1); Sup. Ct. R. 13(1), (3) (imposing a ninety-day deadline to file a petition for a writ of certiorari). Because Geritano filed the Section 2255 petition on November 9, 2015—almost four months late—it is untimely. *See* 28 U.S.C. § 2255(f)(1).

### B. Geritano Is Not Entitled to Equitable Tolling.

Geritano fails to establish that the one-year filing deadline should be equitably tolled. *See Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001) (holding that Section 2255(f)(1)'s one-year limitations period is subject to equitable tolling). "[A] petitioner is entitled to equitable tolling of the one-year statute of limitations" for Section 2255 petitions "if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *United States v. Wright*, 945 F.3d 677, 684 (2d Cir. 2019) (quoting

*Holland v. Florida*, 560 U.S. 631, 649 (2010)).  Alternatively, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013); *see Cosey v. Lilley*, 62 F.4th 74, 77 (2d Cir. 2023).  Geritano has shown neither.

      1. *Extraordinary Circumstances That Impaired Filing*

Geritano has not shown a diligent pursuit of his rights, impaired by some extraordinary circumstance.  The Section 2255 petition contains only general, unsupported statements regarding obstacles Geritano faced.  For example, Geritano writes that he is acting *pro se* and, in light of the "prison environment and the many obs[sta]cles he faced, he was unable to bring this petition until now (which may be a few days/weeks late)."  Section 2255 Petition 23.  Geritano also writes that it was "recently pointed out" to him that his "Constitutional rights" may have been violated "due to counsel's ineffective representation at the time of the hearing in question and on the [direct] appeal of the violation."  *Ibid*.  These assertions are insufficient.  Courts in this Circuit have routinely denied equitable tolling based on an inmate's *pro se* status.  *See, e.g.*, *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) ("[P]*ro se* status does not in itself constitute an extraordinary circumstance meriting tolling."); *Ayala v. Miller*, No. 03-CV-3289 (JG), 2004 WL 2126966, at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status, nor his lack of legal expertise, provides a basis for equitable tolling of AEDPA's statute of limitations."); *Ahmed v. Brown*, No. 06-CV-2857 (CBA), 2006 WL 2355838, at *1 (E.D.N.Y. Aug. 15, 2006) (collecting cases).  Likewise, Geritano's "ignorance of the right to bring a claim" is insufficient to merit equitable tolling.  *Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017); *see Zhi Bao Zheng v. Holder*, 473 F. App'x 95, 96 (2d Cir. 2012) (denying equitable tolling based on petitioner's assertion that "he did not learn of the ineffective assistance of his former counsel until he hired an attorney");

*Thomas v. Unger*, No. 06-CV-6587 (NG), 2007 WL 539039, at *2 (E.D.N.Y. Feb. 15, 2007) ("The district courts have uniformly found" that "ignoran[ce] of the law" does "not justify equitable tolling.") (collecting cases).

  2. *Actual Innocence*

Geritano has also failed to justify tolling based on actual innocence. "In exceptional cases, the actual innocence doctrine provides petitioners a gateway to present an otherwise untimely habeas petition." *King v. United States,* Nos. 10-CR-122, 14-CV-7962 (JGK), 2017 WL 1483337, at *13 (S.D.N.Y. Apr. 25, 2017). But an actual-innocence claim excuses untimeliness only if it is "both 'credible' and 'compelling.'" *Rivas v. Fischer,* 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). To be credible, "it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Ibid.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). For evidence to qualify as "compelling" in the context of a violation of supervised release, at minimum, "the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt.'" *Ibid.* (quoting *House,* 547 U.S. at 538).* Geritano has not presented credible, compelling evidence of his actual innocence. Of the documents accompanying Geritano's motion to amend, the only statement going directly to Geritano's innocence is the sworn declaration in which Polanco states

---

* The Supreme Court addressed the definition of compelling evidence in the context of a challenge to a criminal conviction, which involves the beyond-a-reasonable-doubt standard. *See Schlup*, 513 U.S. at 328 ("[T]he analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence."). However, courts adjudicate violations of supervised release using the less stringent preponderance-of-the-evidence standard. *See* 18 U.S.C. § 3583(e)(3); *United States v. Doka*, 955 F.3d 290, 294 (2d Cir. 2020) ("[T]he Constitution permits judges to revoke a defendant's term of supervised release after finding, under a preponderance-of-the-evidence standard, that the defendant violated his or her conditions of supervised release."). The government has not argued that a preponderance standard should apply to actual-innocence claims in the VOSR context. *See* Resp. to Pet. for Writ of Habeas Corpus 7. Accordingly, I apply the same definition of "compelling" developed in *Schlup* with respect to convictions at trial.

that he stabbed a man at Club Nouveau on the night when Geritano had allegedly stabbed Fusco. *See* Mot. to Amend 13–14. But the circumstances under which that statement was procured cast considerable doubt upon its credibility. The government represents, and Geritano does not dispute, that Polanco was housed in a cell next to Geritano's at the Metropolitan Correctional Center ("MCC") from December 10, 2018, until January 25, 2019. *See* Response to Pet. For Writ of Habeas Corpus 9. Polanco's statement was dated January 23, 2019, and notarized on January 24, 2019—dates near the end of the period in which he occupied the cell next to Geritano. *See* Mot. to Amend 13–14. It strains credulity to imagine that Geritano happened to find himself housed next door to the actual perpetrator of a crime for which he was falsely convicted—and that he was able to elicit this fact from the true assailant and to convince him to sign a confession. Further, at the time that Polanco signed the confession, Polanco was already serving a 76-year-term for shooting two NYPD officers (and facing charges for a separate murder), and the statute of limitations had run on the Club Nouveau stabbing. *See* Response to Pet. for Writ of Habeas Corpus 9. As a result, Polanco's confession stood to benefit his MCC neighbor without subjecting Polanco to any meaningful risk that he would be jailed for the crime to which he was confessing.

Moreover, Polanco's statement lacks specificity and is not corroborated by other evidence in the record. There is no evidence beyond Polanco's own highly general statements that Polanco was even present at Club Nouveau on the evening of the stabbing. And Polanco's description of the events leading up to the stabbing is not consistent with other evidence in the record. Polanco states that the stabbing was preceded by both "a group of women attacking another woman" and "a larger man wearing white" knocking "a man wearing black . . . to the ground nearly unconscious," Mot. to Amend 13, but those assertions do not mesh with any other account of the evening's events. Considering the circumstances under which the Polanco's declaration was

obtained, the fact that Polanco's confession is very unlikely to subject him to criminal jeopardy, and the absence of any corroboration for Polanco's account, Polanco's statement is neither credible nor compelling evidence of Geritano's innocence.

The remaining evidence that accompanies Geritano's amended petition is even less persuasive. Geritano presents 2013 and 2019 statements from Fusco stating that he "do[es] not know of the identity of the person who stabbed" him, Mot. to Amend 6; Letter Dated Apr. 8, 2023 5, as well as a January 2015 statement from John Cerbone that similarly relays that Fusco did not know the identity of the person who stabbed him, Mot. to Amend 15. But Fusco has never been able to identify the person who stabbed him—though he identified Geritano as the person who he had punched at Club Nouveau shortly before the stabbing. *See* Hrg. Tr. 8:9–14. Indeed, Detective Meyers testified at the 2013 VOSR hearing the Fusco was not able to identify his assailant, *id.* at 22:15–19, and Fusco himself testified at Geritano's state criminal trial that he could not make such an identification, Section 2255 Petition 39–40. Fusco's continued inability to identify the person who stabbed him is neither "new" evidence nor exculpatory.

Other evidence is more tangential. Two letters from more than three years after the stabbing appear to be offered to support the claim that video cameras of the bar area at the Club Nouveau would have captured the stabbing. Eli Nackab's letter, dated April 2016, states that based on his review of Club Nouveau's layout, cameras in the bar area would have recorded the fight. *See* Mot. to Amend 18. And an unsworn statement dated September 2016 from Club Nouveau's owner, Heather Kornhaber, states that on the night of the stabbing she reviewed footage from "three cameras that I had . . . facing the bar area." *Id.* at 17. Kornhaber indicates that she saw Fusco arguing with Geritano and saw Fusco punch Geritano in the face, and that after "[a]nother fight broke out w[ith] Mr. Fusco . . . the security team got involved and removed him from the

restaurant." *Ibid.* But while these letters provide some evidence that the club had additional video footage from the night in question, neither statement provides reason to believe that the video footage was exculpatory. Kornhaber, for instance, does not suggest that the stabbing was caught on video, and her account of the events that night is consistent with the evidence that Fusco had punched Geritano shortly before the stabbing.

Similarly, a notarized statement from Joseph Fiore, dated February 2015, is not especially probative. *See id.* at 16. Fiore simply states that he would have testified that he had seen "a scuffle with Mr. Geritano being assaulted," and "witnessed the security people hold him and other [people] breaking up the scuffle," but "didn't not [sic] witness Mr. Geritano stab anyone." *Ibid*. Fiore's statement does not suggest that he had a view of petitioner when the stabbing took place, or that he witnessed someone else stab Fusco. *See ibid*. Under these circumstances, the mere fact that Fiore did not see Geritano commit the stabbing is not credible and compelling evidence of Geritano's innocence.

Finally, the two 2013 statements relating to a possible alternative perpetrator do not amount to "compelling" evidence of Geritano's innocence. To suggest that an individual named Harry Shasho was in fact the perpetrator, Geritano first submits an unsworn, unsigned email dated January 24, 2013, from a person identifying himself as Club Nouveau's head of security, in which the affiant states that Fusco's girlfriend, Cindy Moustaffa, identified a patron in a white shirt as the person who had stabbed Fusco. Mot. to Amend 11. Geritano then submits a notarized statement dated September 18, 2013, from Shasho, stating that he was identified by Moustaffa on the night of the stabbing as Fusco's assailant and was briefly detained by the NYPD before being released. *Id.* at 12. These uncorroborated documents indicate that Moustaffa at one point believed that Shasho had stabbed Fusco. But an identification is only as good as a witness's basis for

making it, and petitioner provides no evidence of that. Nor does the fact that Moustaffa believed Shasho had committed the stabbing meaningfully undermine the evidence from which Judge Johnson inferred that the assailant was Geritano, such as the evidence that Fusco and Geritano fought shortly before the stabbing; the video showing Geritano advancing towards Fusco in "an aggressive stance" while holding "a sharp object" "[c]onsistent with a knife" shortly after Fusco was stabbed, Hrg. Tr. 11:23–12:3, 13:9–14:5, and Geritano's acknowledgement that he had a knife that evening (made in the context of his claim that he had merely picked up the knife from the club floor), *see id*. at 17:22–18:5. As a result, even when viewed together with the remaining materials that Geritano has submitted, these affidavits regarding Moustaffa and Sasho are not so probative of Geritano's innocence that it is "more likely than not" that "no reasonable [factfinder] would find [Geritano] guilty beyond a reasonable doubt." *Rivas*, 687 F.3d at 541.

Accordingly, the Section 2255 petition, as amended, is denied as untimely.

III.     **The Motions for a Hearing Are Denied.**

Geritano's motions for a hearing are also denied. A court need not hold a hearing on a Section 2255 petition if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). To warrant a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States,* 722 F.3d 118, 131 (2d Cir. 2013). Here, as explained above, Geritano has not set forth specific facts supported by competent evidence that, if credited, would render his petition timely. Accordingly, the motions for a hearing are denied.

## CONCLUSION

The Section 2255 petition filed in 03-CR-970 (Dkt. #384) is amended to incorporate petitioner's claims in the motion to amend (Dkt. #390), the Section 2241 petition in 19-CV-7075

(Dkt. #1), and Geritano's supplemental filings. So amended, the petition in 03-CR-970 is denied, as are the motions for a hearing (Dkt. ##394, 435). The Clerk of the Court is respectfully directed to close cases 15-CV-6737 and 19-CV-7075 and to terminate any outstanding motions.

As Geritano has not shown "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)), a certificate of appealability under 28 U.S.C. § 2253(c)(2) is also denied.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: May 17, 2023
       Brooklyn, New York